**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Kerry Kidd

    v.                                   Case No. 22-cv-562-SM-AJ

Paula Mattis, et al.

**Report and Recommendation**

Kerry Kidd is a prisoner at the New Hampshire State Prison and is proceeding pro se in this civil rights action against prison officials, medical providers, and prison employees. On preliminary review pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1), the court gave Kidd an opportunity to file an amended complaint to allege facts that state a cognizable cause of action. Kidd has filed an amended complaint, which is referred for preliminary review.

**Preliminary Review Standard**

The court conducts a preliminary review of complaints filed by prisoners seeking relief from government agents. See LR 4.3(d)(1); see also 28 U.S.C. § 1915A. In considering whether the complaint states a claim, the court determines whether, stripped of legal conclusions, and with all reasonable inferences construed in the plaintiff's favor, the complaint

contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Claims may be dismissed, sua sponte, if the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A(b); LR 4.3(d)(1)(A). Because Kidd is proceeding pro se, the court construes his filings liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## Background

In the amended complaint, Kidd alleges that he had serious back and shoulder pain, that he was not scheduled for surgery soon enough, and that he was not prescribed sufficient medication. He alleges that Dr. Thomas Groblewski prescribed Tylenol, Motrin, Lyrica, and Tramadol for Kidd's pain, but those medications were not adequate to relieve his pain. Dr. Robert Sharp was also aware of Kidd's back and shoulder conditions but would not prescribe Vicodin because of the risk of addiction and would not prescribe Valium because Kidd would "get strong armed for" it. Dr. Strong also would not prescribe a higher dose of

Lyrica. Because he found the prescribed medications to be inadequate, Kidd diverted medications to get relief.[1]

When Nurse Practitioner Benjamin saw Kidd diverting medications in June of 2021, she discontinued Lyrica and Tramadol in pill form for six months. Instead, Nurses Hrinchuk and Pinard administered those medications to Kidd after crushing the pills. Kidd objected to crushing, and Nurse Hrinchuk responded that she was following orders to do so. Nurse Pinard refused to stop crushing the pills.

Kidd had back surgery on March 22, 2022. He alleges that he was prescribed Valium after surgery and discovered that Valium helped him with mental health issues. He alleges that Dr. Andres Martin was "down right rude and refused to prescribe the needed medication." Doc. no. 13, at 2. Kidd alleges that Dr. Brown's stated reason for refusing to prescribe Valium for him was that long-term use had bad effects, and he recommended that Kidd continue to take Lyrica for mental health issues. Kidd alleges

---

[1] A prisoner diverts oral medication by not swallowing it and retaining it for another purpose. See, e.g., Trainor v. Wellpath, No. 20-cv-225-RAL, 2023 WL 2603196, at *9 (W.D. Pa. Mar. 22, 2023) (diverting medications by spitting them into a bottle to take at another time); Hammer v. Munsey, No. 20-cv-526, 2022 WL 992698, at *3 (W.D. Va. Mar. 31, 2022)(administering crushed medication to prevent diverting by hoarding or saving medication in the prisoner's cheek without swallowing it).

that Lyrica did not help ADHD, and he alleges that he had suicidal thoughts.

Kidd alleges before surgery his surgeons "scheduled" him to receive OxyContin and Valium for fourteen days after surgery, but Dr. Cherie Ertha stopped that medication after nine days. He alleges that he experienced severe pain for weeks while he went without the medication. Nurse Practitioner Morris called the hospital, ordered Vicodin for 30 days, and then ordered an additional two weeks of medication.

Kidd alleges that Paula Mattis, Director of Forensic and Medical Services, bears supervisory liability for his allegedly inadequate medical treatment. He alleges that the treatment he received for his back before surgery only hurt him more and that he should have had spinal surgery sooner. He alleges that he attempted suicide after surgery because of the pain. He alleges that medications are not dispensed on a consistent time schedule. He also alleges that he has informed Mattis of his need for mental health treatment, but she has done nothing.

Apart from his medical treatment, Kidd alleges that Major Jon Fouts caused a break down in the prison's grievance procedure by answering Kidd's grievance instead of having the grievance sent to the proper department or the warden or commissioner. He contends that no other department or individual should have answered the grievance.

4

**Discussion**

Kidd brings claims pursuant to 42 U.S.C. § 1983 that the medical providers' decisions about his medications and treatment violated his Eighth Amendment right to treatment for his back pain and post-surgical pain. He contends that Major Fouts violated his Fourteenth Amendment due process rights, and violated the prison's grievance procedure, by answering his grievance. He also brings a claim for supervisory liability against Paula Mattis. For the following reasons, Kidd's Eighth Amendment claim (numbered Claim 8) against Dr. Cherie Ertha will be served, and the district court should dismiss the remainder of Kidd's claims.

A. Eighth Amendment – Medical Care

The Eighth Amendment protects prisoners from harm when prison officials and employees are deliberately indifferent to a prisoner's serious medical needs. Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014). A medical need is serious if it has been diagnosed by a physician to require treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Snell v. Neville, 998 F.3d 474, 495 (1st Cir. 2021). Prisons are not required to provide ideal care or a prisoner's choice of care. Id. Further, disagreements about the appropriate course of treatment are not actionable. Kosilek, 774 F.3d at 82. To violate the Eighth Amendment, the care or lack of

care must be "so inadequate as to shock the conscience." Id. at 83 (internal quotation marks omitted).

If a prisoner can show a serious medical need, to state an Eighth Amendment violation, he then must show that the defendant was deliberately indifferent to that need. Deliberate indifference occurs when the defendant knows of the risk of harm and ignores it. Snell, 998 F.3d at 497. Deliberate indifference is a more culpable state of mind than negligence and "requires evidence that the failure in treatment was purposeful." Kosilek, 774 F.3d at 83.

Kidd alleges that various medical providers did not give him Vicodin or Valium when he believed that was the most effective medication for his physical pain and mental health issues. Kidd was receiving other medications for those purposes, however. He also contends that crushing his tablets constituted an Eighth Amendment violation but does not explain how crushing his medication amounted to a denial of adequate medical care. He also acknowledges that he was diverting his medication when it was not crushed. Kidd alleges that he should have received back surgery sooner than he did but acknowledges that he was receiving other treatment for his spinal issues during the intervening time. As such, for the most part, Kidd's allegations show that he disagreed with the course of treatment prescribed for him but do not show that the providers were deliberately

6

indifferent to his serious medical needs. See Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162-63 (1st Cir. 2006).

One exception exists to that outcome. Kidd alleges that Dr. Cherie Ertha stopped his post-surgical pain medication six days sooner than had been prescribed. As a result, he alleges that he was without adequate pain medication for weeks and that he experienced extreme pain. He alleges that he asked Dr. Ertha for help, but she refused. He alleges that Nurse Practitioner Morris called the hospital and that when she learned of the major surgery Kidd had had, she ordered Vicodin for him to be taken three times per day for 30 days initially and then for two additional weeks. Taken in the light most favorable to Kidd, those allegations may be sufficient to state an Eighth Amendment claim against Dr. Ertha. Wright v. Ruze, 2022 WL 408435, at I5 (D. Mass. Feb. 10, 2022) (stating that physician who discontinues needed pain medication without an effective alternative may demonstrate deliberate indifference to a serious medical need).

Therefore, the district court should dismiss the Eighth Amendment claims against the defendants except Dr. Cherie Ertha.

B. Grievance Procedure

Kidd alleges that he sent a grievance to the warden and that Major Jon Fouts interrupted the grievance process. He states that "[n]o other departments, or a retired civilian,

7

should be answering the grievance." Doc. no. 13, at 3. He further alleges that the interruption was "a break down of their own procedure." Id. Kidd does not plead any legal basis for his claim against Fouts.

Prison policies and procedures do not create federal rights, and violations are not actionable under § 1983. Wescott v. Martin, No. 22-cv-059-LM, 2022 WL 2374164, at *7 (D.N.H. June 2, 2022). Therefore, prison officials' failure to follow prison grievance procedures is not a federal due process violation and is not actionable. Duarte v. Frane, No. 23-110009-NMG, 2023 5179250, at *2 (D. Mass. Aug. 11, 2023). Kidd has not stated an actionable claim based on the alleged violation of the grievance procedure.

### C. Supervisory Liability

Kidd names Commissioner Helen Hanks and Warden Michelle Edmark as defendants but includes no allegations pertaining to them. He alleges a claim for supervisory liability against Paula Mattis, stating that she improperly trained and supervised her staff with respect to the timing of his back surgery and consistency in dispensing medications.

A supervisor cannot be held liable under § 1983 based on respondeat superior, that is, based solely on the actions of subordinates or the supervisor's position of authority. Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir. 2021). Instead,

8

liability must arise from the supervisor's actions or inaction. Id. "To connect the liability dots successfully between supervisor and subordinate in this context, a plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights and that the supervisor's inaction was affirmatively linked to that behavior in the sense that it could be characterized as gross negligence amounting to deliberate indifference." Id. (internal quotation and alteration marks omitted).

Kidd alleges that he told Mattis that he was not receiving treatment for his declining mental health, but she did nothing. In other contexts, however, Kidd alleges that he has tried many medications but has discovered that Valium works best to treat his anxiety and depression. He also alleges that he has been prescribed Lyrica for his mental health issues and that his requests for Valium were denied because of concern that he would be "strong armed" for that medication. Kidd does not have an Eighth Amendment right to the medication of his choice, and his disagreement with the course of treatment prescribed by the medical providers does not demonstrate deliberate indifference.

For the reasons stated above, Kidd has alleged only one claim that survives preliminary review – an Eighth Amendment claim against Dr. Cherie Ertha. He does not allege that Dr. Ertha had any role in the timing of his back surgery, in the

9

consistency of dispensing medication by the prison staff, or in his mental health care. He alleges nothing that connects Paula Mattis's action or inaction to Dr. Ertha's alleged decision to discontinue Kidd's prescribed post-operative pain medication.

With respect to Mattis's own actions or inaction, as is stated above, Kidd received treatment for his back and has and is receiving treatment for mental health issues. Kidd has not alleged facts that show Mattis was deliberately indifferent to Kidd's serious medical needs.

Therefore, Kidd does not state a supervisory liability claim against Mattis, Hanks, or Edmark.

## Conclusion

For the foregoing reasons, the district court judge should dismiss all claims and all defendants alleged in the amended complaint (doc. no. 13) except the Eighth Amendment claim against Dr. Cherie Ertha, as stated in this report and recommendation. The Eighth Amendment claim against Dr. Ertha will be served pursuant to a separate order.

Any objections to this Report and Recommendation must be filed within **fourteen days** of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection to this Report and Recommendation are subject to review in the district

court. See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                        _____
                                                        Andrea K. Johnstone
                                                        United States Magistrate Judge

September 12, 2023

cc:  Kerry Kidd, pro se